United States District Court
Southern District of Texas
**ENTERED**
April 28, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELMEN HOLDINGS, LLC, | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:19cv3293 |
| | § | |
| MARTIN MARIETTA MATERIALS INC., | § | |
| SUCCESSOR BY MERGER TO TEXAS | § | |
| INDUSTRIES, INC., | § | |
|    *Defendant*. | § | |

## **MEMORANDUM AND RECOMMENDATION**

This dispute regarding the enforceability of an over-50-year-old agreement for the mining of sand and gravel is before the Court on Plaintiff Elmen Holdings, Inc.'s Motion for Judgment on the Pleadings (ECF 64).[1] The Court held a hearing on January 12, 2022 and requested supplemental briefing, which the parties filed on February 2, 2022. ECF 79, 80. Having considered the parties' submissions, arguments of counsel at the hearing, and the law, the Court RECOMMENDS that Elmen's Rule 12(c) Motion be DENIED.

### I.   Background

Milton E. Minarcik and Wilma Jean Minarcik on April 16, 1970 executed a Sand and Gravel Mining Agreement ("Gravel Lease") with Texas Industries, Inc. (TXI) that granted TXI the exclusive right to mine sand and gravel on property they owned in

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 14. Defendant Martin Marietta Materials, Inc.'s Motion for Summary Judgment (ECF 65) and Plaintiff Elmen Holdings, Inc.'s Motion for Summary Judgment (ECF 66) remain under consideration and will be addressed in a future Memorandum and Recommendation.

Colorado County, Texas. ECF 1 at 18-39. Martin Marietta acquired TXI and the Gravel Lease in 2014. ECF 65-1 at 35. The Mincarcik's interest in the property passed to Wilma Jean Minarcik's sons, Gary and Sam O'Callahan, upon her death in January 2017. ECF 66-3 at 35-36. Meanwhile, every April from 1970 through 2016, TXI or Martin Marietta paid annual advance royalties pursuant to the Gravel Lease.[2] ECF 65-1 at 39.

In August 2018, with full knowledge of the Gravel Lease, Elmen purchased the property from Gary and Sam O'Callahan for approximately $330,000 (reduced from an initial offer of $450,000). ECF 65-1 at 9. On July 29, 2019, Elmen sued Martin Marietta in Texas state court in Colorado County, seeking a declaratory judgment that it terminated the Gravel Lease. Martin Marietta timely removed the case to this federal court on August 30, 2019 on the basis of diversity jurisdiction. Elmen, with leave of court, filed a Second Amended Complaint on August 27, 2021. ECF 60. Elmen now seeks a judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

## II.     Elmen's Motion for Judgment on the Pleadings under Rule 12(c)

Plaintiff Elmen asks the Court to declare that Elmen is entitled to a judgment as a matter of law that the Gravel Lease is terminable at will by either party and that Elmen has effectively terminated the Gravel Lease. Elmen's motion for judgment seeks relief beyond the scope of Rule 12(c). However, the court will address the contract interpretation issue raised by Elmen's Rule 12(c) motion, which is whether, as a matter of law, the Gravel

---

[2] At some point, the $4,000 annual advance royalty was paid to family members based on their pro-rata shares of the property. As the result of title questions between two owners, Martin Marietta continued TXI's practice of paying both alleged owners a pro rata share, resulting in annual payments of $4,381.06 from 2015 through 2021. ECF 65-1 at 39; ECF 66-3 at 44.

Lease is terminable at will by Elmen because it is a lease for an indefinite term that lacks mutuality.

### A. Legal standards applicable to Rule 12(c) motions.

Federal Rule of Civil Procedure 12(c) provides a mechanism for resolving cases in which the material facts are not in dispute and the court can render a judgment by looking only at the pleadings and judicially noticed facts. *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020). A Rule 12(c) motion may be used to resolve a case in which the only question before the court is one of the interpretation and construction of a contract. *See Starr Indem. & Liab. Co. v. SGS Petroleum Serv. Corp.*, No. CV H-11-2461, 2012 WL 12877817, at *4 (S.D. Tex. July 24, 2012), aff'd, 719 F.3d 700 (5th Cir. 2013) (interpretation of the notice provisions of an insurance contract analyzed under Rule 12(c) standards); *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (applying Rule 12(c) where only question was application and interpretation of a statutory provision). The Court applies Texas law when construing the Gravel Lease and must determine the parties' intent based on the ordinary and generally accepted meaning of the contract terms. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257–58 (Tex. 2017) (citing *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

### B. The Gravel Lease is a "no term" lease that conveys a fee simple determinable interest in sand and gravel to the Lessee.

Elmen argues that as a matter of law the Gravel Lease is terminable at will by either party because (1) a contract that does not have a definite initial term lacks mutuality and is terminable at will by either party; (2) a contract that is terminable at will by one party must

3

be terminable at will by the other; and (3) the Gravel Lease is a true occupancy lease, not an oil and gas lease, and thus is governed by law generally applicable to tenancy leases. Martin Marietta, on the other hand, argues the Gravel Lease contains language that Texas courts have interpreted to convey a fee simple determinable interest in minerals and therefore is enforceable just as "no term" oil and gas leases are enforceable.[3] Alternatively, Martin Marietta argues that the 6-month escrow period in sections 3 and 5 of the Gravel Lease creates a definite initial lease term.  Because the Court concludes that the Gravel Lease conveys a fee simple determinable interest in sand and gravel, the Court does not reach the alternative argument.

The Gravel Lease contains the following provisions relevant to whether the lease confers a tenancy at will of the property or a fee simple determinable interest in minerals:

> 1.  That the Lessor, . . . GRANTS, DEMISES, LEASES, and LETS unto said Lessee, all that certain tract of land . . . with the **exclusive right to prospect, explore, . . . mine, operate, produce, store, sell and remove therefrom, gravel, sand, stone, clay, soil, or any such materials**, . . ..
>
> \*       \*       \*
>
> 2.       Subject to the other provisions herein contained **the term of this lease shall be for as long as merchantable materials are mined or produced from the leased premises**, or for as long as Lessee shall pay the advance minimum royalty as hereinbelow specified.
>
> \*       \*       \*

---

[3] The Texas Supreme Court has defined a "no term" lease as a lease "which does not impose an obligation on a lessee to drill a well or to produce oil or gas or other minerals as a condition (precedent) to the continued life of the lease indefinitely." *Weed v. Brazos Elec. Power Co-op., Inc.*, 574 S.W.2d 570, 572 (Tex.App.—San Antonio 1978, writ ref'd n r.e.) (citing *Fox v. Thoreson*, 398 S.W. 2d 88, 91 (Tex. 1966).  "The hallmark of a primary term lease is that it establishes a period of time at the end of which the estate granted will terminate unless production has been achieved. It is the absence of language which provides for termination of a lease at a specified time unless minerals are being produced which distinguishes the no term lease from a lease containing a primary term." *Id*. at 573.

4. Lessee hereby agrees, on or before two (2) years from the date of this Agreement, to drill or dig any and all test holes . . . to determine the location, amount, and quality of commercially productive materials, . . .. Lessor hereby acknowledges and agrees that the $3,000 Escrow Sum delivered by Lessee . . . constitutes sufficient consideration to continue this agreement in force for the duration of said two (2) year testing period and until the first payment of advance royalties is made hereunder by Lessee.

\*   \*   \*

9.   **Lessee may at any time during the term hereof execute** and deliver to Lessor, or place of record, **a release** covering all of the leased premises **thereby surrendering this lease** and be thereby relieved of all further obligations and liabilities hereunder. . . .

\*   \*   \*

12.   The **commencement, duration and location of operations by Lessee for the purpose of mining** and removing material from the premises during the term of this lease **shall be under the sole and exclusive control of Lessee,** and **Lessee shall not be required to commence or conduct any such operations at any time** nor to mine or remove any minimum or maximum amount of materials **during any part of the term hereof.**

ECF 1 at 18-39 (emphasis added).

Because the Gravel Lease lacks a primary term after which it would terminate if not extended, and because the term of the lease is indefinite —"for as long as merchantable materials are mined or produced or for as long as Lessee shall pay the advance minimum royalty"—Elmen argues it is terminable at will. In support of this argument, Elmen relies primarily on cases involving traditional occupancy leases. For instance, in *Holcombe v. Lorino*, 79 S.W.2d 307 (Tex. 1935) the lessee of vendor stall in a city market sought to enjoin the city from canceling his lease. The lessee argued that the lease would run for as long as he chose to pay rent, but that he could terminate the tenancy and vacate the premises at his pleasure. *Id.* at 310. The Court found the lease "utterly fail[ed] to allege any certain

5

time or duration for said contract to run." *Id.* Stating that "[a]ll leases for uncertain terms are prima facie leases at will[,]" the Court held that the lease in *Holcombe* created a tenancy that could be terminated at will by either party. *Id.* Elmen also relies on *Effel v. Rosberg*, 360 S.W.3d 626 (Tex. App.—Dallas 2012, no pet.), which involved a lease for a term "equal to the remainder of Lessee's life, or until such time as she voluntarily vacates the premises." *Id.* at 630. The *Effel* court concluded that the lease was terminable at will by either party because it contained (1) an uncertain term (the length of tenant's life) and (2) a provision allowing termination at will by the lessee. *Id.* at 630-31 (citing *Holcombe*, 79 S.W.2d at 310).

Martin Marietta argues that case law upon which Elmen relies does not apply to mineral leases like the Gravel Lease. Martin Marietta further argues that the Gravel Lease, which lasts for "as long as" advance royalties are paid or sand and gravel is produced, creates a fee simple determinable interest in the minerals, not a tenancy at will on the property that as a matter of law is terminable by either party. Martin Marietta's position is supported by Texas case law. *See, e.g., Stephens County v. Mid-Kansas Oil & Gas Co.*, 254 S.W. 290, 292-95 (Tex. 1923) (discussing cases which support the proposition that leases which grant the exclusive right to take minerals vest the lessee with an interest in the minerals, and not with a mere "license to enter and operate…."); *Cage Bros. v. Whiteman*, 163 S.W.2d 638, 641 (Tex. Comm'n App. 1942) (holding that a lease that granted the exclusive right to mine sand and gravel vested the lessee with a fee simple determinable interest in the sand and gravel on the land); *Weed v. Brazos Elec. Power Co-op., Inc.*, 574 S.W.2d 570, 573-76 (Tex. App.—San Antonio 1978, writ refused n.r.e.)

6

(categorizing the *Stephens* lease as a "no term" lease that the Texas Supreme Court held to "convey[], at the time of its execution, a fee simple determinable in the oil and gas in place.").

Elmen argues that the Gravel Lease at issue here is not an oil and gas lease and, unlike oil and gas, sand and gravel are part of the "surface estate" of real property rather than a separate mineral estate. ECF 80 at 1 (citing *Moser v. U.S. Steel Corp.*, 676 S.W.2d 99, 101 (Tex. 1984). However, a close reading of the relevant case law demonstrates that whether sand and gravel are considered part of the surface estate does not affect whether a lease with an indefinite term can create a fee simple determinable interest in the sand and gravel. Interpreting a sand and gravel lease that contained a term of "one year and as long thereafter as the terms of the lease are complied with," the *Cage* court held that the sand and gravel lease had the same effect as the oil and gas lease in *Stephens*—it vested the lessee with a determinable fee in the sand and gravel. *Cage Bros. v. Whiteman*, 163 S.W.2d 638, 641 (Tex. Comm'n App. 1942) ("Since [the *Stephens*] holding is sound with respect to the fugitive mineral there involved (oil) there can be no question as to its soundness as applied to the present case which involves solid minerals, such as sand and gravel.").

Furthermore, the Texas Court of Civil Appeals in San Antonio reinforced that *Stephens* applied to leases for minerals other than oil and gas when it held that a coal and lignite mining lease with no primary term and a habendum clause allowing the lessee to extend the lease indefinitely[4] by payment of royalties, was an enforceable "no term lease."

---

[4] The clause allowed the lessee to extend the lease for "so long as the rentals hereinafter provided for are paid and/or so long as coal, lignite, clay, or other minerals (except oil and gas) are produced from" the property. *Weed*, 574 S.W.2d at 572. The Gravel Lease in this case contains similar language.

7

*Weed*, 574 S.W.2d at 573-76. The court in that case recognized the very problem of which Elmen complains:

> The lease involved in this case contains no primary term, and the effect of the language in the habendum clause is to allow lessee to continue the lease in force indefinitely merely by paying delay rentals without commencing development of the minerals. If the language is given its effect, plaintiff is in the unhappy position of being unable to point to a definite date on which she will either be receiving royalties or will again become the owner of the estate granted.

*Id*. at 572. Even so, the court held that the "no term" lease, which contained a provision allowing it to continue indefinitely by the payment of rentals, created a fee simple determinable estate and was not void for lack of mutuality or consideration. *Id*. at 575-76. More recently, the San Antonio Appellate Court held that a 1954 lease to strip mine coal and lignite,[5] which provided for a term "so long as the rentals hereinafter provided for are paid and/or so long as the coal, lignite" are produced, was valid and enforceable under Texas law. *Wheeler, Tr. of L&P Children's Tr. v. San Miguel Elec. Coop., Inc.*, 610 S.W.3d 60, 69 (Tex. App.—San Antonio 2020, pet. denied). In brief, the cases cited by Martin Marietta demonstrate that under Texas law, by executing the Gravel Lease the Minarciks as the original Lessor granted to Lessee the exclusive the right to produce sand and gravel from the property for an indefinite amount of time which created a fee simple determinable interest in those minerals, as opposed to a tenancy at will.

---

[5] Coal and lignite are generally part of the surface estate, but in *Wheeler* the parties had entered into a partition agreement regarding the property that included coal and lignite as part of the mineral estate. 610 S.W.3d at 66. It is unclear whether this fact played any role in the court's interpretation of the duration provision of the lease, a separate contract from the partition agreement.

At the January 12, 2022, hearing the Court asked the parties to address several questions in supplemental briefing, including whether two Fifth Circuit taxpayer cases, *Crowell Land & Mineral Corp. v. C.I.R.*, 242 F.2d 864 (5th Cir. 1957) and *Rutledge v. United States*, 428 F.2d 347 (5th Cir. 1970), have any bearing on the effect of the lease in this case. Elmen argues in supplemental briefing that *Crowell*, *Rutledge*, and three other tax cases demonstrate that a fee simple interest is conveyed by a mineral lease only if the contract constitutes a sale of the minerals *in situ*. ECF 80 at 3. Elmen contends that the Gravel Lease uses the words "lessor" and "lessee" as opposed to "vendor" and "vendee," and does not involve a sale or deed and therefore, it should be treated as a contract that creates only a tenancy, not an ownership interest in minerals. ECF 80 at 2. Yet, in *Stephens* the court noted that the form of an instrument—a sale of minerals, a grant of the exclusive right to mine minerals, or a lease of land with the grant of the exclusive right to prospect for and produce minerals—does not affect the interest conveyed by the instrument. *Stephens*, 254 S.W. at 294. Therefore, the Court agrees with Martin Marietta that the taxpayer cases concern a different legal issue—whether the income from a mineral lease is subject to taxation as capital gains or as ordinary income. ECF 79 at n. 6. The taxpayer cases do not address whether, under Texas law, a lease which grants the exclusive right to mine and produce sand and gravel creates a fee simple determinable interest in the minerals that may last indefinitely, or simply creates an occupancy tenancy at will. Therefore, the taxpayer cases are not instructive for the Court when interpreting the Gravel Lease.

The only case cited by Elmen that held an indefinite gravel lease was subject to termination at will is *Durrett & Co. v. J.M. Iley*, 434 S.W.2d 367 (Tex. App.—Dallas 1968,

9

writ ref'd n.r.e. 1969). In *Durrett*, the landowner sued for a declaration that parties' lease agreement was invalid and unenforceable. The Texas Court of Appeals affirmed the trial court's holding that "because the agreement did not contain any provision for any term, the contract was, as a matter of law, terminable at will." *Id.* at 371. However, the court noted that the extremely simple lease was "couched in layman's language" and "totally devoid of any words of conveyance." *Id.* at 370-71. Therefore, the court found there was no intent to convey or grant to Durrett a fee interest in the real property involved." *Id.* Unlike the lease in *Durrett*, the Gravel Lease here expressly conveys more than just the right to enter the leased premises to remove sand and gravel. For example, the Gravel Lease confers on Lessee the right to "use any materials found on the leased premises to construct a plant site or sites, roadways and railroad tracks and other facilities on, over and across the leased premises …" ECF 1 at 22. Further, the *Durrett* lease was completely silent as to any term or duration, whereas the term of the Gravel Lease "shall be for as long as merchantable materials are mined or produced from the leased premises, or for as long as Lessee shall pay the advance minimum royalty as hereinbelow specified." *Id*. at 19. For these reasons, the Court does not find *Durrett* persuasive on the issue of whether the Gravel Lease conveyed a fee simple interest in minerals or merely a tenancy right to enter the property. In addition, Elmen has not cited any authority demonstrating that a mineral lease containing provisions similar to the Gravel Lease is terminable at will as a matter of law.

Texas law and the plain language of the Gravel Lease mandate the conclusion that the Gravel Lease conveys a fee simple determinable interest in the sand and gravel on the property and not simply the right to enter and occupy the property for an indefinite term.

Because the Gravel Lease confers a fee simple determinable interest in the minerals, it is not governed by the principles of Texas law which state that occupancy leases with an indefinite duration are terminable at the will of either party.

## IV.     Conclusion and Recommendation

For the reasons discussed above, the Court RECOMMENDS that Elmen's Rule 12(c) motion be DENIED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on April 28, 2022, at Houston, Texas.

_____
Christina A. Bryan
United States Magistrate Judge
